UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GARY L. COOKSEY, et al.,

            Plaintiffs,

    v.

SELECT PORTFOLIO SERVICING, INC., et al.,

            Defendants.

No. 2:14-cv-1237 KJM KJN

ORDER

        On August 29, 2014, the court heard argument on plaintiffs' motion for a preliminary injunction and on defendant Bank of America's motion to dismiss. Eric Mercer appeared for plaintiffs; Monique Brewer-Jewett appeared for defendant Bank of America (BANA); Thomas Woods and Bryan Hawkins appeared for defendant Select Portfolio Servicing (SPS). After considering the parties' arguments, the court GRANTS the motion to dismiss in part and DENIES it in part, and DENIES the motion for a preliminary injunction.

I. BACKGROUND

        On May 20, 2014, plaintiffs Gary and Carol Cooksey filed a complaint alleging generally they own and live in a home at 10434 Jalapa Way, La Grange, California. Compl., ECF No. 1 ¶ 12. In May 2006 they refinanced the home and made all their payments until 2012. *Id.* ¶¶ 13-14.

1   In February 2012, after the payment had been adjusted to $5,400.00 a month,
2   plaintiffs sought a loan modification from BANA. *Id*. ¶ 15. They submitted Home Affordable
3   Modification Program (HAMP) applications to BANA in February, July and September 2012, but
4   BANA representatives never responded to the applications. *Id.* ¶¶ 16, 22, 29.

5   In a letter dated September 26, 2012, BANA informed plaintiffs that as of October
6   15, 2012, servicing of the loan would be transferred to SPS. *Id*. ¶ 33. Plaintiffs' contact at
7   BANA said all the paperwork concerning the loan modification would be transferred to SPS. *Id*.
8   SPS did not respond to plaintiffs' September 4 loan modification application. *Id.* ¶ 35.

9   On November 13, 2012, plaintiffs submitted a loan modification application to
10  SPS. *Id*. ¶ 37. SPS responded on December 14, 2012, claiming a document was missing from
11  the application. *Id*. ¶ 39.

12  Plaintiffs submitted a new application for a loan modification on March 11, 2013.
13  *Id*. ¶ 40. On March 30, 2013, an SPS representative told them they had been approved for a
14  HAMP Tier One modification with a new monthly payment of $2,247.50. *Id*. ¶ 41. Plaintiffs
15  never received the documents relating to the trial payment period (TPP). *Id*.

16  Over the next year plaintiffs attempted unsuccessfully to obtain the TPP
17  documents. *Id*. ¶ 43. On April 29, 2014, plaintiffs received a Notice of Trustee Sale, setting the
18  sale for May 22. *Id*. ¶ 44.

19  After finalizing their 2013 taxes and receiving an updated profit and loss statement
20  for the first four months of 2014, they submitted a complete HAMP application to SPS on
21  May 15, 2014. *Id*. ¶ 46. On May 19, an SPS representative told plaintiffs their application was
22  complete. *Id.* ¶ 48.

23  The complaint contains three claims: (1) violations of the Equal Credit
24  Opportunity Act, 15 U.S.C. § 1691(d) against both defendants; (2) a violation of the
25  Homeowners' Bill of Rights, Cal. Civ. Code § 2924.12 (HBOR), against both defendants; and
26  (3) a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.
27  ECF No. 1.
28  /////

2

1    Plaintiffs also filed a motion for temporary restraining order.  ECF No. 3.  On
2 May 21, 2014, the court granted the motion and enjoined defendants from taking any action to
3 alter the status quo of the real property located at 10434 Jalapa Way, La Grange, California.  ECF
4 No. 6.

5    On May 28, 2014, plaintiffs filed a motion for a preliminary injunction.  ECF No.
6 7.  After a hearing, the parties reset the hearing on the motion.  ECF No. 11.  SPS filed its
7 opposition to the motion on July 24, 2014 and plaintiffs filed a reply.  ECF Nos. 24, 30.

8    On July 2, 2014, BANA filed a motion to dismiss.  ECF No. 20.  Plaintiffs filed
9 their opposition on August 8, 2014 and BANA filed its reply on August 15, 2014.  ECF Nos. 26,
10 29.

11 II.  THE MOTION TO DISMISS

12   A.  Standard

13    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to
14 dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may
15 dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged
16 under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
17 1990).

18    Although a complaint need contain only "a short and plain statement of the claim
19 showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion
20 to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a
21 claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
22 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something
23 more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and
24 conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting
25 *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss
26 for failure to state a claim is a "context-specific task that requires the reviewing court to draw on
27 its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the
28 /////

3

interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

    B.  Requests for Judicial Notice

BANA has asked the court to take judicial notice of a number of documents relating to 10434 Jalapa Way recorded in Mariposa County, including a Notice of Default, recorded October 4, 2014; and a Notice of Trustee Sale, recorded January 8, 2014, setting the sale for February 6, 2014. Req. for Judicial Not., ECF No. 21. Plaintiffs do not oppose the request.

A court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). These documents were recorded in the Mariposa County Recorder's Office and their accuracy may be readily determined. Fed. R. Evid. 201(b)(2). The request is granted.

Plaintiffs have asked the court to take judicial notice of portions of Supplemental Directives 09-01 and 09-08 of the HAMP Guidance and of portions of the Making Home Affordable (MHA) Handbook, version 1.0 of the HAMP Guidance. BANA does not object and

/////

at the hearing stipulated the directives were in effect at the time of the events described in the complaint.

Courts in this circuit have taken judicial notice of documents readily available on government websites when neither party disputes the accuracy of the information. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on school district's website when neither party disputed "the authenticity of the web sites or the accuracy of the information displayed therein"); *Johnson v. Hologic, Inc*., No. 2:14-cv-0794 LKK KJN (PS), 2014 WL 2581421, at *2 (E.D. Cal. Jun. 9, 2014) (same). The court grants this request as well.

C. Equal Credit Opportunity Act

The ECOA "makes it illegal 'for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status or age.'" *Schlegel v. Wells Fargo Bank*, 720 F.3d 1204, 1210 (9th Cir. 2013) (quoting 15 U.S.C. § 1691(a)(1)). Courts have found applications for loan modifications to be applications for credit under the ECOA. *See, e.g., Vasquez v. Bank of Am., N.A*., 3:13-cv-02902, 2013 WL 6001924, at *13 (N.D. Cal. Nov. 12, 2013) ("[T]he Federal Reserve has opined that loan modification requests under the Department of Treasury's Making Home Affordable Modification Program ("HAMP") do qualify as 'credit applications' under ECOA, and that loan modifications outside the HAMP should be analyzed using the same factors."); Supplemental Directive 09-01, ECF No. 26-2 at 4; *but see Nickerson-Reti v. Bank of Am., N.A*, Civil No. 13-12316-FDS, 2014 WL 2945198, at *11 (D. Mass. Jun. 26, 2012) ("[T]he denial of a mortgage-loan modification does not constitute an 'adverse action' under ECOA because it does not include a denial or revocation of credit."). There is no suggestion in this case that any of the actions about which plaintiffs complain were taken for a discriminatory purpose.

The ECOA also contains a notice requirement: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). An "adverse action" is a "denial or revocation of credit, a change in the terms of existing credit arrangement, or a refusal to grant credit in substantially the

1  amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).  When a creditor fails
2  to give the required notice when taking an adverse action, the applicant may sue for a violation of
3  the ECOA. *Schlegel*, 720 F.3d at 1210.

4  Although the Ninth Circuit in *Schlegel* did not explicitly say the ECOA notice
5  provisions are distinct from the anti-discrimination provisions, some courts in the Ninth Circuit
6  have found the notice provisions to give rise to a cause of action even with no accompanying
7  claims of discrimination. *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1042 (N.D.
8  Cal. 2010); *Vasquez*, 2013 WL 6001924, at *11. This reading is supported by the regulations
9  implementing the ECOA, which say in part, "The regulation prohibits creditor practices that
10 discriminate on the basis of any of these [listed] factors.  The regulation also requires creditors to
11 notify applicants of action taken on their applications . . . ." 12 C.F.R. § 202.1(b).

12 BANA argues plaintiffs' complaint shows they submitted only one complete loan
13 modification to BANA just before servicing was transferred to SPS and so BANA could not have
14 taken an adverse action.  It also argues any claim based on the February 2012 application is
15 barred by the statute of limitations.  Mot. to Dismiss, ECF No. 20 at 7.

16 Plaintiffs argue the statute of limitations was amended in 2011; the complaint
17 shows they never received any response to the applications submitted in February and July 2012;
18 and BANA confirmed their September 4 application was complete but then did not respond to it
19 before transferring servicing to SPS.  Opp'n, ECF No. 26 at 8.

20 In reply, BANA says plaintiffs cannot state an ECOA claim because ECOA does
21 not apply to applicants who are delinquent on their loans.  Reply, ECF No. 29 at 3.

22 1.  Statute of Limitations

23 Although the statute of limitations for the ECOA previously was two years,
24 *Omoregie v. Boardwalk Auto Ctr., Inc.*, No. C-07-3884 PJH, 2008 WL 3823697, at *3 (N.D. Cal.
25 Aug. 13, 2008), the statute was amended in 2010, extending the time for filing an ECOA suit to
26 five years. *Mungai v. Wells Fargo Bank*, No. C–14–00289 DMR, 2014 WL 2508090, at *9 (N.D.
27 Cal. Jun. 3, 2014); 15 U.S.C. § 1691e(f).  Plaintiffs' claims are timely.
28 /////

    2. Complete Application

    BANA argues that the complaint shows only the September 2013 application was complete and because servicing was transferred to SPS less than thirty days after it received that application, it did not violate ECOA by any failure to respond.

    Under 15 U.S.C. § 1691(d)(1), "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." An application is not complete until the creditor has received, through its exercise of reasonable diligence, the last piece of information regularly obtained in the modification process. *Dufay v. Bank of Am., N.T. & S.A. of Oregon*, 94 F.3d 561, 564 (9th Cir. 1996); *Errico* 753 F. Supp. 2d at 1043; 12 C.F.R. § 202.2 (f).

    Plaintiffs do not specifically allege they submitted complete applications in February, but they do say that in July 2012 they confirmed with BANA's representative that the application was complete except for a profit or loss statement, and thereafter provided additional pages the representative said were missing; BANA then told them they had taken too long to comply. *See* ECF No. 1 ¶¶ 16, 22, 23, 27. They also allege they submitted their third application on September 4, 2012 and received confirmation that the application was complete on September 18. ECF No. 1 ¶¶ 29, 32.

    The thirty-day period for notifying applicants about the action on their submission does not begin to run until the application is complete. *Davis v. U.S. Bancorp*, 383 F.3d 761, 766-67 (8th Cir. 2004); *Wright v. Suntrust Bank*, No. Civ. 1:04-CV-2258, 2006 WL 2714717, at *4 (N.D. Ga. Sep. 18, 2006) (stating that the obligation to notify an applicant about any adverse action or approval did not arise until the application is complete). Plaintiffs have pleaded that on September 18, BANA told them the application was complete, but on October 15, less than thirty days later, servicing was transferred to SPS. Neither party has cited, and the court has not found, any cases discussing what impact a transfer of servicing has on the original creditor's notice obligations under the ECOA. Nevertheless, it stands to reason that when an entity ceases to have responsibility for accepting or rejecting an application for a loan modification, its obligation to

/////

1  notify the applicant also ceases. Plaintiffs have not pleaded an ECOA claim as to the September
2  application.

3          As BANA argues, plaintiffs have not pleaded the February and July applications
4  were complete and so plaintiffs have not pleaded an ECOA violation stemming from BANA's
5  failure to inform them of the action on these applications. In their opposition, plaintiffs argue
6  BANA was required to provide them with a notice these applications were incomplete, a theory
7  pleaded in their complaint. *See* ECF No. 26 at 12; ECF No. 1 ¶ 53.

8          As part of the ECOA notice requirements, a servicer must notify an applicant if the
9  application is incomplete; failure to do so states a claim under the ECOA. *Errico*, 753 F. Supp.
10 2d at 1043-44 (stating plaintiffs stated a claim under the ECOA based on allegations the lender
11 failed timely to inform them of an incomplete application); *Wright*, 2006 WL 2714717, at *4; 12
12 C.F.R. § 202.9(c) ("Within 30 days after receiving an application that is incomplete regarding
13 matters that an applicant can complete, the creditor shall notify the applicant . . . [¶] If additional
14 information is needed from an applicant, the creditor shall send a written notice . . . specifying the
15 information needed, designating a reasonable time period for the applicant to provide the
16 information, and informing the applicant that failure to provide the information requested will
17 result in no further consideration being given to the application.").

18         Plaintiffs do plead that BANA did not respond at all to their February application
19 and that the bank initially told them their July application was incomplete, but then outside the
20 thirty day window notified them documents were missing. ECF No. 1 ¶¶ 16, 23, 27. These
21 allegations state an ECOA claim.

22         3. The Impact of Plaintiffs' Default

23         In their reply, defendants argue that none of plaintiffs' ECOA claims can survive
24 because the ECOA does not apply to applicants who are in default. ECF No. 29 at 3; *see*
25 15 U.S.C. § 1691(d)(6) ("[T]he term 'adverse action' means a denial or revocation of credit, a
26 change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the
27 terms requested. Such term does not include a refusal to extend additional credit under an
28 existing credit arrangement where the applicant is delinquent or otherwise in default . . . .");

*Vasquez*, 2013 WL 6001924, at *12; *Burton v. NationstarMortg. LLC*., No. CV 1:13–0307 LJO GSA, 2013 WL 2355524, at *15 (E.D. Cal. May 29, 2013).  The court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (2007); *Mitchell v. Cate*, No. 2:08–CV–01196, 2014 WL 546338, at *30 (E.D. Cal. Feb. 11, 2014). Moreover, BANA does not address whether plaintiffs' default bars an ECOA claim based on a failure to notify applicants about an incomplete application and the court declines to make this argument for it.  *Doubt v. NCR Corp.*, Case No: C-09-5917, 2014 WL 3897590, at *6 (N.D. Cal. Aug. 7, 2014) ("It is not the role of the Court . . . to make the party's arguments for it.").

    D.  Homeowners' Bill of Rights (HBOR)

Plaintiffs allege they are victims of "dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013).  Under California's HBOR, "[i]f a borrower submits a complete application for a first lien modification . . . a mortgage servicer . . . shall not record a notice of default, notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending," or during any appeal of a determination the borrower is not eligible for a modification.  Cal. Civ. Code § 2923.6 (c)-(f).

BANA argues the HBOR is not retroactive and BANA did not record either the Notice of Default or the Notice of Sale.  ECF No. 20 at 8-9.  At the hearing, plaintiffs stipulated the provisions are not retroactive but rather argued they have pleaded BANA's participation as an aider and abettor or as part of a joint venture.  ECF No. 26 at 13-15.  In reply BANA argues these theories are not adequately pleaded.

    1.  Retroactivity

Courts have uniformly found the HBOR is not retroactive. *See, e.g., Rockridge Trust*, 985 F. Supp. 2d at 1152; *Vasquez*, 2013 WL 6001924, at *8.  As noted, plaintiffs have not argued otherwise.

/////

/////

2. Adequacy of the Pleading

In the complaint plaintiffs allege that the defendants "aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff[s]" and each was "an agent, servant, employee, and/or joint venture of each of the remaining Defendants . . . ." ECF No. 1 ¶¶ 9-10.

In opposition to the motion to dismiss, plaintiffs argue that mortgage servicing can involve "complex relationships between entities in the servicing industry" and "there can be multiple servicers on the same loan . . . ." ECF No. 26 at 13-14.  They also argue BANA might be a master servicer, with liability for the HBOR violations. *Id*.

In California, "liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant assisted." *Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1145 (2005).  In addition, "'[t]here are three basic elements of a joint venture:  the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise.'" *Jeld-Wen, Inc. v. Sup. Ct.,* 131 Cal. App. 4th 853, 872 (2005) (quoting *Orosco v. Sun-Diamond Corp.*, 51 Cal. App. 4th 1659, 1666 (1997)).  Each of these theories must be supported by sufficient facts to show either BANA's knowledge of SPS's HBOR violations or BANA's profit-sharing, joint control and ownership of the undertaking. *Fields v. Wise Media, LLC*, No. C 12–05160 WHA, 2013 WL 5340490, at *3-4 (N.D. Cal. Sep. 24, 2013); *Uecker v. Wells Fargo Capital Fin.* (*In re Mortg. Fund '08 LLC* ), Bankruptcy Case No. 11–49803 RLE, Adv. Proc. No. 12–4137 RLE, 2014 WL 543685, at *6 (Bankr. N.D. Cal. Feb. 11, 2014).  As defendant points out, the complaint is devoid of factual support for plaintiffs' conclusory claims.  The HBOR claim will be dismissed with leave to amend.

E.  Unfair Competition Law

"To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal quotation marks omitted); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192,

1201 (E.D. Cal. 2010).  Because the statute is phrased in the disjunctive, a practice may be unfair or deceptive even if it is not unlawful, or vice versa.  *Lippitt*, 340 F.3d at 1043.

An action is unlawful under the UCL and independently actionable if it constitutes a violation of another law, "be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1999).  Because the statute borrows violations of other laws, a failure to state a claim under the "borrowed statute" translates to a failure to state a claim under the unlawful prong of the UCL.  *See Saunders*, 27 Cal. App. 4th at 838–39.

An act is "unfair" under the UCL if it "significantly threatens or harms competition, even if it is not specifically proscribed by another law" or "is tethered to some legislatively declared policy . . . ."  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 186–87 (1999); *Swanson v. EMC Mortg. Corp.*, No. 09–1507, 2009 WL 4884245, at *9 (E.D. Cal. Dec. 9, 2009).  "[T]he 'unfairness' prong has been used to enjoin deceptive or sharp practices . . . ."  *Countrywide Fin. Corp. v. Bundy*, 187 Cal. App. 4th 234, 257 (2010) (internal citation and quotation marks omitted).  In a federal court, an unfair business practice claim grounded in fraud must be pled with particularity under Rule 9(b).  *Vess v. Ciba-Geigy Corp.,* USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9.

Defendant argues only that the UCL claim fails because plaintiffs' underlying claims fail.  As noted, plaintiffs have adequately alleged an ECOA violation, so their UCL claim based on a violation of that law survives.

III.  MOTION FOR A PRELIMINARY INJUNCTION

    A.  Standard

Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  As provided by Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction to preserve the relative position of the parties pending a trial on the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The party seeking injunctive relief must

show it "is likely to succeed on the merits, . . . is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Before the *Winter* decision, the Ninth Circuit employed a "sliding scale" or "serious questions" test, which allowed a court to balance the elements of the test "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). Recently, the Circuit has found that its "serious question" sliding scale test survived *Winter*: a court may issue a preliminary injunction when the moving party raises serious questions going to the merits and demonstrates that the balance of hardships tips sharply in its favor, so long as the court also considers the remaining two prongs of the *Winter* test. *Cottrell*, 632 F.3d at 1134-35. However, a court need not reach the other prongs if the moving party cannot as a threshold matter demonstrate a "fair chance of success on the merits." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2008)) (internal quotations omitted).

B. Analysis

Plaintiffs argue that the imminent sale of their home constitutes irreparable injury and they are likely to succeed on their HBOR claim. Mot. for Prelim. Inj., ECF No. 7 at 4.

SPS argues plaintiffs are not facing an immediate threat of irreparable harm because it has postponed the foreclosure while reviewing plaintiffs' requests for modification and will continue to do so in light of a pending request for modification. Opp'n, ECF No. 24 at 5. It also argues plaintiff cannot show a likelihood of success on the merits of their HBOR claim because they have not pleaded and have not otherwise shown that their subsequent requests for modification were supported by proof of a change in their financial circumstances; they are not entitled to a review of an incomplete application; and no application was pending at the times either the Notice of Default or the Notice of Sale were recorded, among other things. Opp'n, ECF No. 24 at 13-15. SPS also argued plaintiffs had not alleged an ability to tender the amount of the mortgage, but at hearing conceded that tender was not required.

12

1    If the sale of plaintiffs' home proceeds, plaintiffs will permanently lose ownership of the property, their principal residence. This constitutes irreparable harm. *Kilgore v. Wells Fargo Home Mortg.*, No. 1:12–CV–00899 AWI, 2012 WL 2195656, at *1 (E. D. Cal. June 13, 2012) (citing *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011)) ("With respect to irreparable injury, a plaintiff's loss of her residence is usually sufficient to satisfy this element."); *Wrobel v. S.L. Pope & Assocs.*, No. 07-CV-1591 IEG (BLM), 2007 WL 2345036, at *1 (S. D. Cal. Aug. 15, 2007) ("Losing one's home through foreclosure is an irreparable injury." (citation omitted)).

Although SPS disputes whether plaintiffs have submitted a complete application and whether either the Notice of Default or Notice of Trustee's Sale were recorded while a complete application was pending, SPS represents it will not conduct a foreclosure sale while reviewing plaintiffs' latest application. Opp'n, ECF No. 24 at 10. Although plaintiffs dispute the claim that their application was incomplete, on the date of the hearing they discussed the state of their application with SPS's counsel. In a status report filed on September 2, at the court's invitation, counsel for SPS represents that he provided a list of missing information to plaintiffs' counsel and gave plaintiffs until September 11 to provide the necessary information. Status Report, ECF No. 33 at 2 & Exs. A-D. The September 2 status report is the last filing on the court's docket.

To secure the issuance of an injunction, a party must show the threatened injury is both likely and immediate. *Winter*, 555 U.S. at 22 (stating that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original); *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). "[E]stablishing a threat of irreparable harm in the indefinite future is not enough." *Amylin Pharm, Inc. v. Eli Lilly and Co.*, 456 F. App'x 676, 679 (9th Cir. 2011) (unpublished).

/////

1    Counsel's representation in the opposition and the September 2 status report show
that SPS is continuing to work with plaintiffs in considering the possibility of a loan modification
and, based on this and on counsel's representation that SPS will not undertake a trustee's sale
while the modification process is continuing, the court does not find plaintiffs are facing an
immediate threat of irreparable injury.

IT IS THEREFORE ORDERED THAT:

1. Defendant BANA's motion to dismiss, ECF No. 20 is granted without leave to amend insofar as plaintiffs premise their claim on the September 2013 application for a loan modification, and granted with leave to amend their allegations that BANA is liable for HBOR violations based on its liability as an aider and abettor or part of a joint venture;

2. Plaintiffs' amended complaint is due within twenty-one days of the date of this order; and

3. Plaintiffs' motion for a preliminary injunction, ECF No. 7, is denied without prejudice.

DATED: September 17, 2014.

_____
UNITED STATES DISTRICT JUDGE